**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIA C. R., <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>KILOLO KIJAKAZI, <br>Acting Commissioner of Social Security, <br><br>　　　　Defendant. | Case No. EDCV 21-1788-RAO <br><br>**MEMORANDUM OPINION AND ORDER** |

## I.　INTRODUCTION

Plaintiff Maria R.[1] ("Plaintiff") challenges the Commissioner's denial of her supplemental security income ("SSI") under Title XVI, and disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

///

///

///

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II. SUMMARY OF PROCEEDINGS

On August 15, 2019, Plaintiff filed an application for SSI alleging disability beginning on July 28, 2018, due to arthritis of the right knee and use of a cane. (Administrative Record ("AR") 69, 203-10.) On October 22, 2019, Plaintiff filed an application for DIB, alleging the same disability onset date and cause. (AR 59, 211-12.) The Commissioner denied both claims by initial determination on December 10, 2019. (AR 77-78.). Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). (AR 116, 122.) A hearing was held on January 20, 2021, at which Plaintiff testified. (AR 33-58.) The ALJ issued a decision denying Plaintiff's applications. (AR 21-28.) The ALJ's decision became the Commissioner's final decision on February 10, 2021, when the Appeals Council upheld the ALJ's decision. (AR 1-5.) Plaintiff filed this action on October 22, 2021. (Dkt. No. 1.)

To determine whether Plaintiff was disabled under the Social Security Act, the ALJ followed the familiar five-step sequential evaluation process. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 28, 2018. (AR 23.) At **step two**, the ALJ found that Plaintiff has the severe impairments of "right knee osteoarthritis and obesity." (AR 24.) At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 24.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except Plaintiff "cannot climb ladders, ropes, or scaffolds; and she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl." (AR 24.) At **step four**, the ALJ found that Plaintiff has the RFC to do her past relevant work as a floral arranger and deli counter worker. (AR 27.) Accordingly, the ALJ

determined that Plaintiff had not been under a disability since July 28, 2018. (AR 28.)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed.2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340

F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises three issues for review: (1) whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's allegations of pain and physical dysfunction; (2) whether the ALJ improperly relied on outdated medical opinions; and (3) whether Plaintiff's past work at a grocery store was a composite job, and whether she was able to perform the duties of that job as actually performed in the past. (Joint Stipulation ("JS") at 2.) For the reasons below, the Court affirms.

### A. The ALJ Gave Specific, Clear, and Convincing Reasons for Discounting Plaintiff's Subjective Symptom Testimony

#### 1. Applicable Legal Standards

Where, as here, the claimant has presented evidence of an underlying impairment and the ALJ did not make a finding of malingering (*see* AR 24-25), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [his or her] . . . ability to perform work-related activities." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL5180304, at *4. In assessing the intensity and persistence of symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's statements. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citation omitted). The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

///

### 2. Discussion

The ALJ considered Plaintiff's statements concerning the intensity, persistence, and limiting effects of her knee pain and found the testimony inconsistent with the medical evidence and other evidence in the record. (AR 25.) The ALJ specifically found that Plaintiff's conservative treatment, the objective medical evidence, and her daily activities undermine her testimony. (AR 25-27.)

### a. Conservative Treatment

An ALJ may discount a claimant's testimony based on routine and conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting a plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal conservative treatment' that she received"). Here, the ALJ considered Plaintiff's use of a brace, a cane, physical therapy, pain medication, steroid injections, and her refusal of surgery to support a finding of conservative medical treatment. (AR 25-26.) The ALJ observed that Plaintiff received knee injections in 2018. (AR 26.) By 2019 Plaintiff alleged minimal relief from the injections and did not continue with this treatment. (AR 26, 330-32, 339.) In September 2019, Plaintiff reported temporary relief with Meloxicam and Ibuprofen, but did not want to use Ibuprofen long term. (AR 26, 330.) By December 2020, Plaintiff continued to report pain but declined surgery. (AR 26, 471-72.)

Citing *Revels*, 874 F.3d at 677, and *Gilliland v. Saul*, 821 F. App'x. 798, 799 (9th Cir. 2020), Plaintiff argues that treatment with pain medications and injections does not qualify as conservative treatment. Both cases are distinguishable from the facts at hand.

In *Revels*, the claimant received injections into his neck, back, and hands, and was prescribed several pain medications, "including Valium, Vlector, Soma,

Vicodin, Percocet, Neurontin, Robaxin, Trazodone, and Lyrica." 874 F.3d at 667. The court in *Revels* cast doubt on the notion that "epidural steroid shots to the neck and lower back qualify as conservative medical treatment" for fibromyalgia. *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) (internal quotation omitted). Here, Plaintiff received injections in her right knee (AR 339) and was treated with Ibuprofen and Meloxicam. (AR 26, 330, 333, 416-17.) Although the record shows Plaintiff was also prescribed Duloxetine and Tramadol for pain (AR 333, 328-29), by November 2020, Plaintiff stated she was only taking Meloxicam. (AR 459, 472.) During the administrative hearing, Plaintiff testified that she was only taking vitamins and turmeric. (AR 50.) The ALJ observed that Plaintiff reported relief with Motrin, "but did not want to use it chronically." (AR 26, 330.) Plaintiff's pain medication treatment is less extensive than, and distinguishable from, the claimant's treatment in *Revels*.

In *Gilliland*, the court also found that "several pain medications and trigger point injections" is not conservative treatment for fibromyalgia. 821 F. App'x. at 799 (citing *Revels*, 874 F.3d at 677). *Gilliland* is distinguishable for the same reasons *Revels* is distinguishable. Specifically, Plaintiff managed her pain with one medication (Meloxicam). (AR 26, 326, 459, 472-73.) As the ALJ described, Plaintiff's minimal pain medication treatment is a legitimate reason to reject her pain symptoms. *See Parra*, 481 F.3d at 751 (the ALJ properly found that claimant's pain testimony was not credible where conditions were treated with limited pain medication).

Plaintiff also argues that the evidence of being recommended for surgery refutes a finding of conservative treatment. (JS at 10.) As Plaintiff points out, and the ALJ observed, Plaintiff ultimately refused surgery. (JS at 10-11; AR 26, 472.) While there are any number of good reasons for not seeking treatment or not following a prescribed course of treatment, "a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the

sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff contends "it is unreasonable to infer that any hesitancy Plaintiff expressed in moving forward with surgery contradicted her allegations of pain" given the risks of undergoing surgical procedures during the COVID pandemic, in addition to the normal risks of surgery. (JS at 11 n.1.) Although Plaintiff's reasons could be acceptable under the governing regulations, *see* 20 C.F.R. Sections 404.1530(c)(3) and 416.930(c)(3), Plaintiff did not assert these reasons before the ALJ. *Cf Harris v. Comm'r of Soc. Sec. Admin.*, 605 F. App'x 612, 614 (9th Cir. 2015) (finding that although an ALJ should not reject a claimant's credibility if the claimant has good reasons for gaps in treatment, the claimant did not assert her reason before the ALJ).

Therefore, the ALJ properly rejected Plaintiff's pain testimony based on conservative medical treatment.

### b. Daily Activities

Generally speaking, an ALJ may use inconsistencies between a claimant's testimony and his or her other statements, conduct, and daily activities as a basis for discounting his or her testimony. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *see also Burkett v. Berryhill*, 732 F. App'x 547, 552 (9th Cir. 2018) ("While transferability of skills to a work setting is one way in which an ALJ may consider a claimant's daily activities, an ALJ may also discount claimant testimony where reported daily activities contradict the claimant's alleged extent of her limitations."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount claimant's credibility). Here, the ALJ found that, although Plaintiff reported that her pain was aggravated by standing and walking, her admission to dressing and grooming herself, driving, and walking to the park with her grandchildren contradicted her pain testimony. (AR 25, 370.)

///

Plaintiff argues that Plaintiff's daily activities are not inconsistent with her allegations of physical dysfunction, nor do they demonstrate that she could perform the standing or walking necessary for full-time gainful work activity at a light exertional level. (JS at 8.) The Commissioner argues that such evidence is probative of Plaintiff's ability to perform substantial gainful activity. (JS at 22.) Although Plaintiff is correct that the mere fact a claimant has carried on certain daily activities such as grocery shopping, driving a car, or limited walking for exercise, does not detract from her credibility as to her overall disability, *see Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001), courts in this circuit have relied on evidence of daily activities to find pain allegations not credible. *See Fair*, 885 F.2d at 603 (finding the ALJ properly discredited claimants pain allegations based on his ability to care for all of his own personal needs, to perform routine household maintenance and shopping chores, to ride public transportation, and to drive his own car); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming an ALJ's adverse credibility determination reasonable despite "equivocal" testimony about how regularly the claimant engaged in her activities); *Burch*, 400 F.3d at 680 (affirming the ALJ's adverse credibility determination where claimant could care for her own personal needs, cook, clean, shop, and interact with her nephew and boyfriend). Even though evidence of Plaintiff's daily activities could also be interpreted to be more favorable to Plaintiff, the ALJ's interpretation is rational and should be upheld. *See Burch*, 400 F.3d at 680.

### c. Objective Medical Evidence

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. "The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence alone." *Id.* at 680 (citing SSR 96-7P, 1996 WL 374186, at *2).

///

Here, the ALJ found that during the relevant period, Plaintiff's body mass index ("BMI") would be indicative of obesity, and that Plaintiff's obesity "would reasonably cause additional stress on her knee, and thus increase her pain and compound her limitation." (AR 26.) The ALJ considered multiple imaging studies of Plaintiff's knees, including an April 2018 study that showed mild degenerative changes. (AR 26, 384-85.) An MRI from August 2018 "demonstrated mild osteoarthritis, some displacement of the patella, and low-grade chondromalacia." (AR 26, 363-64.) The ALJ found that an X-ray from May 2019 again demonstrated degenerative changes. (AR 26, 387.) The ALJ considered an MRI from February 2020 that demonstrated severe lateral compartment osteoarthritis. (AR 26, 437-39.) The ALJ also found that Plaintiff's physical examinations throughout the record were often within normal limits, and when abnormalities were indicated, they were "generally limited to tenderness, some swelling, painful range of motion, and an antalgic gait." (AR 26.) When Plaintiff has exhibited decreased range of motion, it is noted as minimal and "typically demonstrates no limitation in motion of the right knee." (AR 26.) Lastly, the ALJ noted that Plaintiff generally exhibits full strength in her extremities. (AR 26.)

Plaintiff argues that the ALJ failed to explain how she reached her conclusion on whether obesity causes any limitations in accordance with SSR 19-2P, 2019 WL 2374244, at *4-5. (JS at 7.) Here, the ALJ did consider multiple entries in the record indicating a BMI range from 31 to 38. (AR 26.) The ALJ recognized that Plaintiff's obesity would "reasonably cause additional stress on her knee, and thus increase her pain and compound her limitations." (AR 26.) After considering the evidence, the ALJ concluded that Plaintiff has the RFC to perform light work with some exceptions. (AR 24.) Based on the record, the ALJ adequately considered Plaintiff's obesity in determining RFC. *See Burch*, 400 F.3d at 684 (finding that the ALJ properly considered the functional limitations imposed by claimant's obesity when the ALJ acknowledged physicians' notes regarding obesity, as well as possible

effects of obesity on claimant's back); *see also Paula W. v. Kijakazi*, No. 21-04092-DMR, 2022 WL 2439178, at *12 (N.D. Cal. July 5, 2022) (finding the ALJ adequately accounted for the functional limitations posed by claimant's obesity). Additionally, Plaintiff has not identified, and there is no evidence in the record, of any functional limitations as a result of Plaintiff's obesity that the ALJ failed to consider. *See Burch*, 400 F.3d at 684. The Court finds the ALJ properly considered Plaintiff's obesity.

Plaintiff's argument that the ALJ failed to adequately consider evidence of a complex meniscus tear from the February 2020 MRI lacks merit. (JS at 7.) The 2018 MRI showed "mild osteoarthritis of lateral femorotibial joint. (AR 376.) The 2020 MRI noted "[s]evere lateral compartment arthritis." (AR 437-38.) The ALJ incorporated the 2020 MRI evidence by finding that Plaintiff had "severe right knee osteoarthritis" at step two. (AR 24.) In determining Plaintiff's RFC, the ALJ considered all symptoms and impairments. (AR 24-25.) The ALJ properly consider the 2020 MRI by incorporating its finding that Plaintiff had severe arthritis. [2]

Lastly, Plaintiff argues that the ALJ's assertion that the examination evidence was normal is inaccurate, and the ALJ made only a vague reference to Exhibit 2F (AR 322-394) without specifically identifying the evidence that undermines the Plaintiff's testimony. (JS at 5-6.) "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). Here, the ALJ made only general findings regarding

---

[2] To the extent Plaintiff argues that the complex tear of the meniscus undermines the ALJ's conclusion that Plaintiff could perform the six hours of standing/walking necessary for light level work, Plaintiff fails to identify any functional limitations associated with this medical finding. The ALJ considered Plaintiff's severe arthritis and ultimately decided Plaintiff had the capacity for light work with limitations.

Plaintiff's physical examination history, summarizing instances of tenderness, swelling, range of motion, and gait, and linked those findings to Plaintiff's pain complaints. (AR 26.) A court may not take a general finding and comb the record to find specific conflicts. *Cf Burrell v. Colvin*, 775, F.3d 1133, 1138 (9th Cir. 2014) ("Our decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors—and comb the administrative record to find specific conflicts.") Therefore, the ALJ failed to provide sufficiently specific evidence to allow the Court to conclude the ALJ properly rejected Plaintiff's pain testimony.

However, the ALJ's error is harmless because the ALJ relied on other substantial evidence to discredit Plaintiff's pain testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding error is harmless if substantial evidence remains to support the ALJ's credibility finding). Here, the ALJ properly relied on Plaintiff's conservative treatment and daily activities to discredit Plaintiff's pain testimony. Because two out of the three reasons the ALJ relied on to discredit Plaintiff's pain testimony are supported by substantial evidence, the ALJ's improper reliance on objective medical evidence is harmless error.

In sum, two out of the three reasons cited by the ALJ for discounting Plaintiff's testimony are supported by the record. The Court finds that these reasons are sufficient to uphold the ALJ's credibility determination. *See Carmickle*, 533 F.3d at 1162-63.

### B. The ALJ Did Not Have a Duty to Further Develop the Record

Plaintiff argues that the ALJ should have consulted with a medical source to determine whether Plaintiff's February 2020 MRI precluded Plaintiff from performing light level exertion. (JS at 26.) Additionally, the ALJ relied on the medical opinions of two state agency physicians, neither of whom considered the February 2020 MRI. (JS at 25-26.) The Commissioner argues that the ALJ did not

have a duty to further develop the record because the record was neither ambiguous nor inadequate. (JS at 30.) The Court agrees with the Commissioner.

### 1. Applicable Legal Standards

The ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan*, 242 F.3d at 1150. Where the record evidence contains all of the relevant treatment records and presents no ambiguity or inadequacy, an ALJ has no obligation to develop the record further. *See Mayes,* 276 F.3d at 459-60 (noting an ALJ's duty to develop the record further is triggered only when evidence is ambiguous or inadequate to allow for proper evaluation); *see also Johnson v. Saul*, No. 1:19-CV-01584-SKO, 2021 WL 84377, at *5, 7 (E.D. Cal. Jan. 11, 2021) (finding no obligation to develop the record further where record contained complete treatment records that supported the ALJ's findings, and the record did not present ambiguity or inadequacy). Further development of the record is not always required where the state agency physicians did not have an opportunity to consider updated medical evidence. *See*, *e.g.*, *Smith v. Saul*, No. 1:19-CV-01085-SKO, 2020 WL 6305830, at *8 (E.D. Cal. Oct. 28, 2020).

### 2. Discussion

The ALJ considered both the August 2018 MRI ("2018 MRI") and the February 2020 MRI ("2020 MRI"). (AR 26.) The 2020 MRI had three major impressions. First, the scan showed a "[c]omplex tear of the anterior horn and body of the lateral meniscus extending into the posterior horn. Severe lateral compartment arthritis is noted." (AR 437-38.) The 2018 MRI had a similar finding noting "lateral meniscus body nonspecific but likely representing degenerative signal. Subtle degenerative fraying/tear however not entirely excluded in the inner free edge." (AR 376.) Both scans indicated the presence of a meniscal tear. The 2020 MRI indicated "[m]ild chondral degeneration of the medial compartment femoral joint." (AR 437-38.) The 2018 MRI indicated "[m]ild osteoarthritis of the lateral femorotibial joint,

with high-grade chondrosis . . ." (AR 376), suggesting improvement in the femoral joint from high-grade chondrosis in 2018 to mild chondral degeneration in 2020. Lastly, the 2020 MRI noted "[m]oderate lateral patellar subluxation[3] in the setting of trochlear dysplasia, suggestive of patellofemoral instability." (AR 437-38.) The 2018 MRI also found "[p]atella alta.[4] Nonspecific mild lateral displacement of patella. Correlate[s] clinically regarding patella maltracking." (AR 376.) Both scans indicated patellar dislocation.

Plaintiff's arguments that the state agency doctors did not consider the new evidence, and that the ALJ should have consulted with a medical source regarding the 2020 MRI are not persuasive. (JS at 25-26.) First, Plaintiff's implication that the 2020 MRI would have changed the opinions of the state agency physicians is mere speculation. *See Findley v. Saul*, No. 1:18-CV-00341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (finding claimant's suggestion that the records post-dating the state agency physicians' opinions would have changed their opinions is mere speculation and not persuasive). Second, Plaintiff does not indicate how the 2020 MRI created an ambiguous or inadequate record requiring further development. *See Mayes*, 276 F.3d at 459-60. The three findings in the 2020 MRI, tear of the anterior lateral meniscus, chondral degeneration of the femoral joint, and patellar subluxation, were also present in the 2018 MRI. Thus, Court finds the 2020 MRI did not create an ambiguous or inadequate record, and the ALJ was not required to further develop the record.

///

///

---

[3] "An incomplete luxation or dislocation; although a relationship is altered, contact between joint surfaces remains." *Subluxation*, *Stedmans Medical Dictionary*, available on Westlaw at STEDMANS 859110 (updated Nov. 2014).

[4] "[T]erm used to describe a somewhat more proximal position of the patella than anticipated when it is visualized on a lateral radiograph of the knee." *Patella Alta*, *Stedmans Medical Dictionary*, available on Westlaw at STEDMANS 661620 (updated Nov. 2014).

### C. The ALJ Properly Determined Plaintiff's Prior Work at a Grocery Store Was Not a Composite Job

Plaintiff argues the ALJ committed error at step four by not categorizing Plaintiff's past work at a grocery store as a composite occupation. (JS at 33-34.) As such, the ALJ should not have been allowed to consider whether Plaintiff could perform the work as it is generally performed in the national economy. (JS at 34.) The Commissioner contends the evidence supports a finding that Plaintiff's past work was not that of a composite job, and the ALJ properly determined Plaintiff was able to return to her past relevant work. (JS at 34.) For the reasons discussed below, the Court agrees with the Commissioner.

#### 1. Applicable Legal Standards

A claimant may be found not disabled at step four based on a determination that they can perform past relevant work as it was actually performed, or as it is generally performed in the national economy. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). "The claimant has the burden of proving an inability to return to his former type of work and not just to his former job." *Villa v. Heckler*, 797 F.2d 794, 798 (1986). "The regulations advise an ALJ to first consider past work as actually performed, and then as usually performed." *Pinto*, 249 F.3d at 845 (citing SSR 96-8P, 1996 WL 374184, at *3).

There are two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82-61, 1982 WL 31387, at *2; and the claimant's own testimony, SSR 82-41, 1982 WL 21389, at *4. *See Pinto*, 249 F.3d at 845. "To ascertain the requirements of occupations as generally performed in the national economy, the ALJ may rely on [Vocational Expert ("VE")] testimony or information from the [Dictionary of Occupational Titles ("DOT")]." *Jesus P. v. Berryhill*, No. EDCV 17-1633-JPR, 2019 WL 134552, at *3 (C.D. Cal. Jan. 8, 2019); SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000); SSR 82-61, 1982 WL 31387, at *2 (Jan 1, 1982).

If a prior occupation has significant elements of two or more occupations, and no counterpart in the DOT, it is classified as a "composite job." *Jesus P.*, 2019 WL 134552, at *3 (citing SSA Program Operations Manual Sys. ("POMS") DI 25005.020(B), https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020 (last visited Sept. 2, 2022)); SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982). If claimant's past relevant work is a composite job, "the ALJ considers only whether the claimant can perform his past relevant work as actually performed." *Jesus P.*, 2019 WL 134552, at *3. An ALJ may not define past relevant work according to its "least demanding function." *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985).

### 2. Background Information

Plaintiff completed a work history report and listed all of the jobs she held in the last fifteen years. (AR 254-265.) Plaintiff listed three job titles from August 1999 through October 2013, "Box Boy," "Floral," and "Bakery." (AR 254.) These three jobs were "all the same company." (AR 265.) As a box boy, Plaintiff bagged groceries, collected shopping carts from the parking lot, reshelved items, and would lift groceries in excess of fifty pounds. (AR 255.) Plaintiff worked six hours a day, 24 hours a week, at an hourly rate of $7.50. (AR 255.) In the floral department, Plaintiff would fix flower arrangements, take out all the dead flowers, and would lift flower vases to place them on display. (AR 256.) Plaintiff worked eight hours a day, 40 hours a week, at an hourly rate of $9.25. (AR 256.) In the bakery department, Plaintiff would bake French bread, stocked the dessert tables, rotated the displayed pastries, and carried pastries to the display tables. (AR 257.) Plaintiff worked eight hours a day, 40 hours a week, at an hourly rate of $14.25. (AR 257.)

At the telephonic administrative hearing, Plaintiff testified that she worked in the floral department of a grocery store 13 years ago. (AR 45.) While working in the floral department, her duties were to take the plants from the back and put them in water, care for the plants, put in them in displays, and provide customer service such as making arrangements. (AR 45.) Plaintiff testified that the job was mostly

standing and walking, and she sometimes had to lift twenty pounds to move vases. (AR 46.)

When asked if she worked any other jobs at the grocery store, Plaintiff testified, "I worked for floral, and then I worked with service deli." (AR 46.) While working at the grocery store service deli, her duties included customer service and cutting deli meats and cheeses. (AR 47.) The position required mostly standing, walking, and lifting ten to 15 pounds. (AR 47.)

At the hearing, the VE identified several classifications of past relevant work including, floral arranger, delicatessen counter worker, and several warehouse positions. (AR 54-55.) The VE classified the title of floral arranger with a specific vocational preparation (SVP) of three and light physical exertion as performed by Plaintiff. (AR 54-55.) The VE classified the title of delicatessen counter worker with an SVP of two and light physical exertion level as performed by Plaintiff. When asked the hypothetical question if an individual could perform any of the Plaintiff's past work given the RFC described by the ALJ, the VE testified that "the position of a Floral Arranger would be appropriate, both as actually and as generally performed. The position of delicatessen counter worker would only be appropriate as performed by the [Plaintiff], but not as . . . generally performed in the national economy." (AR 55-56.) Plaintiff's counsel did not question the VE during the hearing. (AR 57-58.)

### 3. Discussion

Plaintiff's argument that the work history report suggests that she performed the duties of three or four jobs simultaneously between August 1999 and October 2013 is not persuasive. (JS at 33.) Substantial evidence supports the ALJ's finding that Plaintiff did not work a composite job.

The ALJ defined Plaintiff's past relevant work as a floral arranger at a light physical demand level, a deli counter worker actually performed by Plaintiff at a light exertional level, and a composite job as a hand packager and marker II. (AR 27.) The work history report identifies three different job titles, each with a different

description of job duties and hourly rates while working at the grocery store. (AR 255-57.) As a box boy, Plaintiff worked 24 hours a week and 40 hours a week in the floral and bakery departments. (AR 255-57.) At the hearing, Plaintiff testified about her duties in the floral department. (AR 45-46.) When asked about her other jobs at the grocery store, Plaintiff testified ". . . I worked for floral, and then I worked with service deli." (AR 46.) There is no evidence in the record that contradicts Plaintiff's testimony or supports that Plaintiff worked a composite job. Plaintiff's testimony supports the ALJ's determination that she did not work a composite job as a floral or a deli counter worker. *See Pinto*, 249 F.3d at 845 (relying on claimant's own testimony to determine her past work as actually performed); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (finding claimant's own testimony was highly probative evidence that supported the ALJ's determination that claimant could return to work). Even if the work history report could be interrupted to mean Plaintiff performed the duties of three or four different jobs, the ALJ's conclusion must still be updated. *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (citation omitted)).

To the extent that Plaintiff argues that further inquiry is required regarding whether Plaintiff performed the duties of a composite job while working at the grocery store, the Court is not persuaded. (JS at 33.) At step four, the burden rests with Plaintiff to show that she worked a composite job. *See Hurtado v. Berryhill*, No. CV 16-876-AS, 2017 WL 2056165, at *4 (C.D. Cal May 12, 2017), *aff'd*, 749 F. App'x 663 (9th Cir. 2019) (holding claimant has the burden to show that her prior job had significant elements of two or more occupations). Plaintiff points to the work history report indicating that she would bag groceries for customers and worked in the bakery department as evidence that she performed a composite job between August 1999 and October 2013. (JS at 33.) As discussed above, the substantial evidence supports a finding that Plaintiff did not work a composite job.

Additionally, Plaintiff did not raise this issue before the ALJ. Plaintiff had an opportunity to question the VE but chose not to. (AR 57-58.) Because Plaintiff did not raise the issues before the ALJ and did not challenge the VE's testimony at the administrative hearing, the argument is forfeited. *See Hurtado*, 749 F. App'x at 663 (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1109-10 (9th Cir. 2017); *Meanel*, 172 F.3d at 1115).

The Court finds that substantial evidence supports the ALJ's determination that Plaintiff did not work a composite job while employed at the grocery store between August 1999 and October 2013.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 31, 2022                                /s/
                                                          ROZELLA A. OLIVER
                                                          UNITED STATES MAGISTRATE JUDGE

### NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**